## S. R. SIMPSON V. THE STATE.

No. 16033.   Delivered October 25, 1933.
State's Rehearing Denied January 31, 1934.
Reported in 67 S. W. (2d) 314.

The opinion states the case.

*Carl Rountree,* of Lamesa, and *Vickers & Campbell,* of Lubbock, for appellant.

*G. H. Nelson,* District Attorney, of Tahoka, *Bledsoe, Crenshaw & Dupree,* of Lubbock, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is receiving a deposit of money and assenting to the reception thereof in an insolvent bank; the punishment, confinement in the penitentiary for two years.

The trial was had in Terry County on a change of venue from Gaines County.

Appellant was president of First State Bank of Seminole, Texas, which was duly incorporated under the laws of the state, with a capital stock of $25,000.   While not actively employed in the bank, appellant attended all directors' meetings, and visited the bank about every ten days.   Being the owner of 180 shares of the stock, he determined the bank's policy.   In November, 1930, the bank was in a flourishing condition.   On November 18th of the same year the directors purchased certificates of the Hobbs School District, which included the town of Hobbs, New Mexico.   From time to time until the month of

December, other purchases of these certificates were made until an amount aggregating $81,000 was included in the bank's assets. From the time of the purchase of the school certificates until the bank was closed on the 6th day of April, 1931, there were steady withdrawals of deposits by the citizens of Hobbs, New Mexico. It appears that Hobbs had rapidly grown into a city of 40,000, as a result of the discovery of oil. Appellant's bank was situated in Seminole, which was 35 miles from Hobbs. At the time the bank was closed and placed in the hands of the banking commissioner for liquidation, practically the entire citizenship of Hobbs, New Mexico, had removed to other places, the testimony being to the effect that the town had "vanished." During the time of the withdrawal of the deposits by the citizens of Hobbs, appellant's bank found itself in the position of having to borrow money from other banks. Forty thousand dollars of the best secured notes in the bank were rediscounted. Twenty-five thousand dollars was secured by placing up as collateral $37,000 in notes belonging to the bank. After these transactions were had, an examination was made by a state bank examiner. In his report he stated that the bank was solvent. However, he criticised the certificates of the Hobbs School District. After January 17, 1931, an effort was made to sell the certificates, but no bids were received. On March 25th of the same year the total amount of deposits in the bank aggregated $143,000, while the cash on hand was $5,422. The cash in the vault decreased from that date until April 6th when the bank was closed for liquidation. In the meantime, due to a shortage of money, the bank was compelled to refuse the payment of $7,000 in drafts. Approximately a week before the bank closed, appellant went to Denver, Colorado, in an effort to dispose of $25,000 worth of the Hobbs certificates. Not being successful, he started his return trip. While he was enroute from Denver to Seminole, the deposit upon which the indictment was predicated was received by W. J. Davis, the cashier of the bank, the date being April 2, 1931. Appellant was in Seminole Saturday, April 4th. A state bank examiner was in the bank during the entire day, the proof being to the effect that he did not order the bank closed. On the day before the bank closed, several bankers from the South Plains Association met and decided to aid appellant's bank by investing in the Hobbs certificates. The plan failed, however, because a sufficient number of banks could not be found to take up $60,000 worth of the certificates, which was the amount of money the bank required. It appears, however, that three or four bankers then agreed to take $40,000 worth of these certificates. On

Monday, April 6, 1931, by vote of the board of directors, the bank was closed and its affairs placed in the hands of the state banking commissioner.

Appellant earnestly insists that the state failed to prove beyond a reasonable doubt that the bank was insolvent at the time it received the deposit. That this burden rested on the state is well settled. Pool v. State, 58 S. W. (2d) 120. Touching the question of insolvency, the proof was to the effect that, on the date the bank closed, its assets, as shown in the books, exceeded its liabilities by approximately $45,000. Among the assets were the Hobbs certificates in the sum of $81,000, and $120,767 in loans and discounts. Also some real estate and bank fixtures were included. Mr. Davis, the cashier, who was a state's witness, testified that in his opinion, at the time the bank closed, 95 per cent of the notes were good and could be collected. Hence it would seem that $114,729 in notes were "good and collectible." The bank's liabilities amounted to $176,077. Thus, including the Hobbs certificates, the assets of the bank were more than enough to discharge its liabilities. We find nothing in the record to indicate that the certificates were invalid, other than a statement by a witness that the property valuation in one part of the district was too low to warrant the issuance of bonds for the purpose of refunding the certificates, and, further, that an effort to hold an election in that part of the district had been enjoined. The proof was to the effect that at the time of the trial, which was approximately two years after the bank closed, the certificates had been placed in the hands of an attorney in New Mexico for collection. As far as the record reflects the matter, the certificates were properly issued. They were approved and countersigned by the Educational Budget Auditor of the State of New Mexico. That they were valid obligations appears to have been attested by the attorney in the Budget Auditor's office, as well as by an Assistant Special Tax Attorney for the State of New Mexico. Further, it appears that one part of the district had held an election and voted $25,000 in bonds for the purpose of refunding that amount of the certificates. However, the failure of the other part of the district to hold an election prevented the refunding of the certificates. The certificates were payable 360 days after issuance, the proof being that they would mature July 3, 1931. Witnesses, both for the state and appellant, testified that, at the time the bank closed, they thought the certificates were good.

In the light of the testimony, we are unable to reach the conclusion that the state has shown that the certificates were

worthless. As far as the record reflects the matter, they appear to be valid obligations of the school district. It is true that the proof shows that the bank had made an effort to sell the certificates and had been unsuccessful. The failure to sell the certificates might be attributed to business conditions generally. Not only does the record show, but this court judicially knows that in 1931 the financial stress prevailing throughout the country brought about stagnation in every line of business. It is observed that there is nothing in the record to indicate any fraudulent transactions on the part of appellant as president of the bank. He made every effort to secure the money needed by his bank to meet the immediate demands of the depositors. As stated, at the very time the deposit was received, he was returning from Denver to Seminole after an unsuccessful effort to sell part of the school certificates; and on the day before the bank closed he was still endeavoring to secure the needed money.

In the state of the record we are constrained to hold that the state has failed to discharge the burden of proving that the bank was insolvent. We quote from Fleming v. State, 139 S. W., 598, as follows:

"Again, the rule that the bank must be able to meet all checks and demands made upon it at once would be more than harsh for it would place banks at the mercy of any combination formed against it, and place it at the mercy of those holding checks and drafts against it, if they should see proper to make a run upon it when it was not prepared upon the moment to collect in its cash or loaned money. At the time this bank closed, it was not only shown in the record, but is a matter of current history, that our country was in a financial panic, and it was impossible for the banks to meet their liabilities from one end of the country to the other."

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—The state has filed a logical and forcible motion for rehearing, in the light of which the record has been again carefully reviewed, but we are not convinced that our former opinion was erroneous.

The state's motion for rehearing is overruled.

*Overruled.*